942 F.2d 1039
 138 L.R.R.M. (BNA) 2174, 120 Lab.Cas. P 10,935,
69 Ed. Law Rep. 715, 1992 SERB 4-23
 Carol WEAVER; Vicki Hahn; Sharron L. Carroll; Angela
Segrist; Lois Kupferberg; and Alice Tennenbaum,
Plaintiffs-Appellants,
v.
UNIVERSITY OF CINCINNATI; Joseph L. Steger; Jill Parris;
and District 925, Service Employees International
Union, Defendants-Appellees.
 No. 90-3825.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 2, 1991.
Decided Aug. 26, 1991.
 
 Glenn M. Taubman, W. James Young (argued and briefed), National Right to Work Legal Defense Foundation, Springfield, Va., J. Michael Dobyns, Rose & Dobyns, Cincinnati, Ohio, for plaintiffs-appellants.
 Eric C. Holzapfel (briefed), Wood & Lamping, Donald J. Mooney, Jr. (argued and briefed), Benesch, Friedlander, Coplan & Aronoff, Cincinnati, Ohio, for defendants-appellees.
 Before RYAN and SUHRHEINRICH, Circuit Judges, and McRAE, Senior District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Plaintiffs, six nonunion public employees of the University of Cincinnati, appeal the denial of their motion for a preliminary injunction directing defendants, the University, and its collective bargaining representative, District 925 of the Service Employees International Union (the Union), to cease withholding from their pay agency shop fees on behalf of the Union. This appeal presents two issues:
 
 
 2
 Whether plaintiffs' request for a preliminary injunction is moot because of a subsequent arbitration decision and the Union's renotification to nonmembers; and
 
 
 3
 Whether the district court erred in determining that the plaintiffs failed to show irreparable injury and, as a consequence, abused its discretion in denying plaintiffs' motion for a preliminary injunction.
 
 
 4
 We conclude that plaintiffs' request for a preliminary injunction is not moot, and that the district court erred as a matter of law in holding that plaintiffs suffered no irreparable injury. We hold, further, that plaintiffs are entitled to temporary injunctive relief. Therefore, we shall reverse and remand.
 
 I.
 
 5
 Plaintiffs are nonunion employees of the University who filed this civil rights action in August 1990, under 42 U.S.C. § 1983, claiming that the University and the Union had seized agency shop fees from plaintiffs in violation of the First Amendment. Contemporaneously, plaintiffs filed a motion for preliminary injunction to prevent the continued deduction of the fee under the terms of the collective bargaining agreement between the University and the Union. In September 1990, the district court denied plaintiffs' motion for preliminary injunction, holding only that plaintiffs had failed to show irreparable injury.
 
 
 6
 The Union represents office employees of public and private employers in several bargaining units in Ohio and other states. In October 1988, District 925 was certified to represent approximately 1,200 office employees of the University. Some members of the bargaining unit are not members of the Union. These nonmembers are required to pay an "agency fee," or "fair share fee," for collective bargaining services the Union provides to them, but they are not required to pay, as a portion of the agency fee, any amount which is attributable to the Union's partisan, political activities or to ideological purposes unrelated to collective bargaining.
 
 
 7
 The collective bargaining agreement entered into in October 1989 provided for the deduction of agency fees. On May 3, 1990, District 925 mailed to all nonmembers a notification describing the agency fee requirement negotiated as part of the collective bargaining agreement which provided that objecting nonmembers would be charged 90% of regular Union dues. The notice described the manner in which the agency fee was calculated and explained how a nonmember could "dissent" in order to qualify for the reduced agency fee. In addition, this notice described how a nonmember could "challenge" the fee, thereby obtaining the right to an arbitration hearing on whether the Union had properly determined that 90% of the agency fee was devoted exclusively to collective bargaining activities. Persons who neither dissented nor challenged the fee would automatically pay the Union's full dues through payroll deduction.
 
 
 8
 The Union received 157 "dissents" and 55 "challenges." In July 1990, the University began deducting 90% of the Union dues from the salaries of those who dissented and challenged. The Union placed in escrow the agency fees withheld from the paychecks of those who challenged. The six plaintiffs are challengers whose agency fees have been deducted from their paychecks and placed into escrow.
 
 
 9
 In November 1990, after plaintiffs filed their motion for preliminary injunction, an arbitration hearing was held, pursuant to the challenge procedure as described in the May 3 notice, for a determination of the appropriateness of the agency fee. The arbitrator found:
 
 
 10
 As to the Union's fair share fee calculation for 1989, it must be, and is, found that with the exception of the "Professional Fees & Expenses," District 925 [of the Service Employees International Union] met its burden of establishing, with reasonable precision and detail, the constitutionally permissible bases for its chargeable expenditures.
 
 
 11
 However, the arbitrator found defects in the Union's notification procedures. In particular, the arbitrator found that: 1) it was improper to require notification of a dissent or challenge by certified mail; and 2) it was improper for the Union to use an internal appeal procedure before challengers could exercise their right to arbitration before an impartial hearing officer. The arbitrator then ordered renotification to all of the Union's nonmembers.
 
 
 12
 On November 20, 1990, District 925 mailed renotifications to all nonmembers which provided that both the requirement of certified mailings and the internal appeal procedure had been eliminated. It also included a copy of an audit conducted by the Union's independent auditor. Thereafter, any nonmembers who "dissented" in response to the renotification, but who had been paying an amount equal to full Union dues since July 1990, would receive a 10% rebate from the Union for the dues paid since July 1990. For new challengers, all of the Union dues collected would be placed in escrow.
 
 
 13
 Plaintiffs argue that defendants' agency fee collection scheme is in direct violation of the Supreme Court decision in Chicago Teachers Union, Local No. 1 v. Hudson, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). Plaintiffs claim that defendants' May 3 scheme: 1) failed to provide the nonunion agency fee payers with an adequate audited financial disclosure of the Union's alleged chargeable fees; 2) failed to provide any financial disclosure regarding expenditures of the affiliated state and national labor organizations that received money from the Union; and 3) required nonmembers to object using certified mail which was unreasonably burdensome. Plaintiffs also contend that their request for injunctive relief is not moot as a result of defendants' renotification because there is an ongoing concern regarding First Amendment violations. They assert that, regardless of the renotification, this court must determine the constitutionality of the May 3 notice procedure because that was the procedure in place when the district court considered and denied their motion for preliminary injunction.
 
 
 14
 In response, defendants argue that because the renotification complies with existing law, plaintiffs' appeal is moot. They also assert that notwithstanding the mootness issue, the district court did not abuse its discretion in denying plaintiffs' motion for preliminary injunction because plaintiffs have failed to demonstrate irreparable injury or a likelihood of success on the merits.
 
 II.
 A.
 Mootness
 
 15
 Defendants argue that the arbitrator's award and the Union's renotification to nonmembers renders plaintiffs' appeal moot because defendants have now complied with the requirements of Hudson and the threat of irreparable injury to nonunion members has been removed. Thus, defendants assert, preliminary injunctive relief is inappropriate. Plaintiffs insist, however, that the Union's renotification does not cure the irreparable harm suffered as a result of the seizure of their funds, pursuant to the "constitutionally inadequate plan" incorporated in the collective bargaining agreement, and that despite the renotification, the agency fee scheme remains constitutionally invalid under Hudson.
 
 
 16
 We conclude that this case is not moot because, in determining the propriety of the district court's refusal to issue an injunction, we consider only the Union's May 3 notification, not the later renotification. As the Supreme Court stated:
 
 
 17
 "[V]oluntary cessation of allegedly illegal conduct does not moot a case." The same concerns--the fear that a defendant would be "free to return to his old ways," and that he would have "a powerful weapon against public law enforcement,"--dictate that we review the legality of the practice defended before the District Court.
 
 
 18
 Hudson, 475 U.S. at 305 n. 14, 106 S.Ct. at 1075 n. 14 (citations omitted) (emphasis added). Therefore, because Hudson requires that we review the practice "defended before the District Court," we must examine the sufficiency of the May 3 notice, not the November 20 notice. Moreover, the renotification is constitutionally inadequate because it does not satisfy the requirements of Hudson. As more fully addressed below, the renotification does not disclose any financial information concerning the Union's fourteen affiliated state and national labor organizations. This is in direct violation of Hudson. See 475 U.S. at 307 n. 18, 106 S.Ct. at 1076 n. 18.
 
 B.
 Preliminary Injunction
 
 19
 In its order denying the plaintiffs' motion for a preliminary injunction, the district court specifically found that "with but five plaintiffs and a small sum of money involved, neither irreparable injury has been shown nor that the interests of the public require extraordinary relief of injunction."
 
 
 20
 Plaintiffs argue that the district court erred as a matter of law in holding that plaintiffs do not suffer irreparable harm as a result of the seizure of their agency fees. They claim that in the absence of adequate notice and the procedural protections outlined in Hudson, they suffer irreparable First Amendment injury. They also contend that they have demonstrated a likelihood of success on the merits of their claim.
 
 
 21
 A district court's decision to deny a preliminary injunction will not be overturned absent evidence of abuse of discretion. NAACP v. City of Mansfield, 866 F.2d 162, 166 (6th Cir.1989). However, that rubric may be oversimple in this case because the decision whether to issue the preliminary injunction required resolution of issues of constitutional law which we review de novo, and of findings of fact which we review only for clear error.
 
 
 22
 The four familiar criteria the district court was required to balance are:
 
 
 23
 "1) Whether the plaintiffs have shown a strong or substantial likelihood or probability of success on the merits;
 
 
 24
 2) Whether the plaintiffs have shown irreparable injury;
 
 
 25
 3) Whether the issuance of a preliminary injunction would cause substantial harm to others; [and]
 
 
 26
 4) Whether the public interest would be served by issuing a preliminary injunction."
 
 
 27
 Id. (citation omitted). The district court considered only whether the plaintiffs would suffer irreparable injury without injunctive relief, found they would not, and did not address the remaining three Mansfield criteria. Although we think the court erred as a matter of constitutional law in finding no irreparable harm and that its decision must be reversed on that basis alone, we shall address the other three Mansfield criteria as well.
 
 
 28
 Before addressing each factor, we briefly discuss the requirements of Hudson. Hudson establishes the constitutional setting in which the familiar preliminary injunction criteria must be applied in cases such as this one. Stated differently, Hudson provides the context in which we must test the constitutional validity of the district court's conclusion that plaintiffs have suffered no irreparable injury.
 
 III.
 Legality of Agency Fees Under Hudson
 
 29
 It is well established that a public employer may designate a union as the exclusive bargaining representative of its employees and may require nonunion employees, as a condition of employment, to pay a fair share of the union's expenses of negotiating and administering a collective bargaining agreement. Abood v. Detroit Bd. of Educ., 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977). However, nonunion employees have a First Amendment right to " 'prevent the Union's spending a part of their required service fees to contribute to political candidates and to express political views unrelated to its duties as exclusive bargaining representative.' " Hudson, 475 U.S. at 302, 106 S.Ct. at 1073 (citation omitted).[1]
 
 
 30
 Hudson establishes three procedural safeguards necessary to ensure that agency fee collection schemes are "carefully tailored to minimize the infringement" upon nonunion members' First Amendment rights. Id. at 303, 106 S.Ct. at 1074. First, the scheme must include a " 'procedure which will avoid the risk that [nonmembers'] funds will be used, even temporarily, to finance ideological activities unrelated to collective bargaining.' " Id. at 305, 106 S.Ct. at 1075 (citation omitted). Second, the plan must provide nonmembers with adequate "information about the basis for the proportionate share" agency fee charged them. Id. at 306, 106 S.Ct. at 1075. Third, the procedure must "provide for a reasonably prompt decision by an impartial decisionmaker" when nonmembers object to the amount of the agency fee. Id. at 307, 106 S.Ct. at 1076.
 
 
 31
 In Hudson, the Supreme Court examined the procedures used by the Chicago Teachers Union to collect fair share fees from teachers who were not members of the union. The Court held that the First Amendment required that the nonunion teachers be given "sufficient information to gauge the propriety of the union's fee." Id. at 306, 106 S.Ct. at 1076. The Court stated that the union must identify the expenditures allocated to collective bargaining for which the nonmember teachers could be charged a fair share fee. The Court recognized, however, that " '[a]bsolute precision' in the calculation of the charge to nonmembers cannot be 'expected or required.' " Id. at 307 n. 18, 106 S.Ct. at 1076 n. 18 (citations omitted). Although a union "need not provide nonmembers with an exhaustive and detailed list of all its expenditures, ... adequate disclosure surely would include the major categories of expenses, as well as verification by an independent auditor." Id. Moreover, adequate disclosure would include a showing that the union's payments to its affiliated state and national labor organizations were not "used to subsidize activities for which nonmembers may not be charged, or an explanation of the share that was so used." Id.
 
 
 32
 This court has previously applied Hudson to cases wherein nonunion members have challenged the procedures employed by unions for collecting agency fees. In Tierney v. Toledo, 824 F.2d 1497, 1506 (6th Cir.1987), we found that the procedure for collecting agency shop fees from nonmembers was unconstitutional under Hudson because the union failed to provide detailed, audited financial information concerning all major categories of union expenses prior to the collection of the fees.
 
 
 33
 Similarly, in Damiano v. Matish, 830 F.2d 1363, 1370-71 (6th Cir.1987), we found the procedure used by the union to provide nonunion members with information regarding agency shop fees constitutionally inadequate under Hudson because 1) the information provided by the union failed to inform nonunion members of the actual amount of the fee or how the fee had been calculated; 2) the nonunion members had to specifically request the information from the union; and 3) the nonunion members were required to object to the union's expenditures before the union provided any information about the fees.
 
 
 34
 Likewise, in Lowary v. Lexington Local Bd. of Educ., 854 F.2d 131, 134 n. 1 (6th Cir.1988), we found that once nonunion members objected to current procedures in place for the collection of all agency fees, and once the district court found these procedures likely to be unconstitutional, it was an abuse of discretion for the court to allow fees to continue to be collected even if they were placed in an escrow account. This court enjoined the collection and escrow of all agency fees as was contrary to Hudson. Id. at 135.
 
 
 35
 Moreover, in a subsequent review of the procedures set forth in Lowary, we noted:
 
 
 36
 [r]equiring nonmembers to contribute to the cost of collective bargaining involves a substantial interference with their First Amendment right of freedom of association. Although it may be somewhat burdensome on the unions, full disclosure of financial information is a minimal requirement in exchange for this interference. Hudson and a due regard for First Amendment values lead to this conclusion. The union must provide detailed information so that the dissenting teachers can understand why they are being charged. Only then can they make an informed decision.
 
 
 37
 Lowary v. Lexington Local Bd. of Educ., 903 F.2d 422, 432 (6th Cir.) (footnote omitted), cert. denied, --- U.S. ----, 111 S.Ct. 385, 112 L.Ed.2d 396 (1990).
 
 IV.
 
 38
 With that as a statement of the constitutional context in which we determine whether the district court abused its discretion in refusing the requested injunction, we turn to a consideration of the traditional criteria for the injunction decision.
 
 
 39
 As stated earlier, before granting a motion for preliminary injunction, a district court must consider four criteria:
 
 
 40
 "1) Whether the plaintiffs have shown a strong or substantial likelihood or probability of success on the merits;
 
 
 41
 2) Whether the plaintiffs have shown irreparable injury;
 
 
 42
 3) Whether the issuance of a preliminary injunction would cause substantial harm to others; [and]
 
 
 43
 4) Whether the public interest would be served by issuing a preliminary injunction."
 
 
 44
 Mansfield, 866 F.2d at 166.
 
 
 45
 Although the district court in this case recognized that it must balance these factors with "other traditional equity factors," it specifically found:
 
 
 46
 It is entirely probable that Plaintiffs may have a limited success in that a portion of the "fair share fee" withheld may ultimately be returned to them. That, however, is not the question presented to the Court at this time.
 
 
 47
 What is of great significance in the balancing that is required of a District Court is the matter of irreparability of injury. The amount involved appears to be approximately Twenty Dollars ($20.00) per Plaintiff per month....
 
 
 48
 ....
 
 
 49
 A withholding of approximately One Hundred Dollars ($100.00) per month in total from five plaintiffs in an escrow account for a period of a few months does not constitute irreparable injury.
 
 
 50
 Thus, the district court confined its analysis to a consideration of the prospects for irreparable harm without balancing this factor with the other three criteria. More importantly, even with respect to the irreparable harm criterion, the district court's analysis overlooked a number of essential considerations enunciated under Hudson that bear, as a matter of law, upon plaintiffs' claim of irreparable injury. Because the district court's irreparable harm determination was dispositive, we address that factor first.
 
 A.
 Irreparable Injury
 
 51
 In order to determine whether plaintiffs have shown irreparable injury sufficient to entitle them to the requested temporary injunction, the district court was required to consider Hudson and its progeny. However, the court found that defendants' agency fee seizures could never constitute irreparable injury because of the amount of money involved, without any consideration whatever of Hudson's requirements, despite the law of this circuit which holds that a court must issue a preliminary injunction when a union's notice or objection procedures are constitutionally deficient underHudson. See Lowary, 854 F.2d at 134; Damiano, 830 F.2d at 1370; and Tierney, 824 F.2d at 1504. Specifically, we have mandated that the "collection of a 'fair share' service fee from the dissenting non-union members must be stayed by appropriate injunctive relief until a constitutionally adequate plan consistent with the holdings in Abood, Hudson, and this opinion is functioning." Tierney, 824 F.2d at 1507.
 
 
 52
 Defendants argue, and the district court agreed, that the amount of money seized from plaintiffs is such an insubstantial sum that it could not constitute irreparable injury. However, the Supreme Court has stated that "[t]he amount at stake for each individual dissenter does not diminish [the First Amendment] concern. For, whatever the amount, the quality of respondents' interest in not being compelled to subsidize the propagation of political or ideological views that they oppose is clear." Hudson, 475 U.S. at 305, 106 S.Ct. at 1075. Thus, the dollar amount in issue is irrelevant. Because no fees may be collected in the absence of constitutionally adequate notice and procedures, the district court erred in determining that "[a] withholding of approximately One Hundred Dollars ($100.00) per month in total from five plaintiffs in an escrow account for a period of a few months does not constitute irreparable injury."
 
 
 53
 Moreover, the Supreme Court has recognized that the placement of challenged agency fees in an escrow account is not a sufficient interim remedy when there are flaws in a union's collection plan. Hudson, 475 U.S. at 309, 106 S.Ct. at 1077; see also Lowary, 854 F.2d at 134-35. In Hudson, the Court specifically rejected the union's argument that "because a 100% escrow completely avoids the risk that dissenters' contributions could be used improperly, it eliminates any valid constitutional objection to the procedure." 475 U.S. at 309, 106 S.Ct. at 1077.
 
 
 54
 The Union's escrow deprives plaintiffs of funds they are entitled to retain: those that relate to the Union's political or ideological causes and thus are nonchargeable expenditures. The escrow plan results, therefore, in constitutional injury.
 
 
 55
 Therefore, in light of Hudson, the district court erred in concluding that plaintiffs could not suffer irreparable harm by the deduction because the amount involved is the relatively small sum of approximately $100 from five plaintiffs. Moreover, the court failed to recognize that the Union's escrow procedure was not a "constitutionally adequate plan" for the collection of agency fees.
 
 B.
 Likelihood of Success on the Merits
 
 56
 Although the district court did not address the plaintiff's substantial likelihood of success on the merits, we think it should have and, had it done so, would have been obligated to conclude that, at the very least, the Union's procedure for the collection of agency fees from nonmembers violated Hudson. At a minimum, the court had to decide whether the Union's plan offered nonmembers a sufficiently detailed explanation of the major categories of the Union's expenses. Without adequate notice concerning the amounts allocated by the Union to ideological and nonideological purposes, nonunion members do not have "sufficient information to gauge the propriety of the union's fee."
 
 
 57
 It is clear that the Union's procedure for calculating and collecting agency fees, as set forth in the May 3 notice, fails to meet the Hudson standards in at least three respects.
 
 
 58
 First, the Union's financial disclosure fails to identify the Union's affiliates. Our decision in Tierney v. Toledo, 917 F.2d 927, 937 (6th Cir.1990), makes clear that "adequate financial disclosure 'must include an audited, detailed accounting of local union payments to affiliated state and national labor organizations that will be used for agreement and non-agreement related purposes.' " Id. at 937 (emphasis added) (quoting Tierney, 824 F.2d at 1503).
 
 
 59
 Although we note that the Supreme Court recently concluded that "a local bargaining representative may charge objecting employees for their pro rata share of the costs associated with otherwise chargeable activities of its state and national affiliates," Lehnert v. Ferris Faculty Ass'n, --- U.S. ----, 111 S.Ct. 1950, 1961, 114 L.Ed.2d 572 (1991), the local Union is nevertheless required, under Hudson, to delineate what portion of the agency fee goes to the Union's affiliates. A local union does not have "carte blanche to expend dissenters' dollars for bargaining activities wholly unrelated to the employees in their unit." Id.
 
 
 60
 The Union's financial disclosure, in this case, fails to provide any financial information whatsoever concerning the Union's affiliates. Because some of the agency fees paid by nonmembers could be passed on to affiliated state and national labor organizations and expended for nonchargeable activities in violation of plaintiffs' First Amendment rights, the Union's financial disclosure statement is inadequate as a matter of law.
 
 
 61
 Second, the Union's objection procedure was unconstitutionally burdensome. The Union required that a letter of dissent, challenge, or appeal to arbitration, be sent by the nonmember by certified mail. This requirement is unduly burdensome because objection procedures "must afford dissenting non-members a reasonable time to voice their objections and must not be framed so as to discourage the exercise of their First Amendment rights by intimidation or the imposition of unrealistic and excessively complex procedural requirements." Tierney, 24 F.2d at 1503. In this case, a nonmember challenger may have been discouraged or intimidated by the requirement for a certified mailing, a method of mailing familiar to all in the business world but unfamiliar to some in other callings. This requirement, while indeed a minor burden, is nevertheless an unnecessary one that interferes with the ability of challengers and dissenters to merely "voice their objections."
 
 
 62
 Third, the Union's internal appeal procedure failed to meet Hudson's requirement that the Union "provide for a reasonably prompt decision by an impartial decisionmaker." Hudson requires that the nonunion employee be entitled to "have his objections addressed in an expeditious, fair, and objective manner." 475 U.S. at 307, 106 S.Ct. at 1076.
 
 
 63
 Under the Union's notice procedure, the Union gave nonunion members the choice of sending either a letter of dissent or a letter of challenge. The letter of challenge then triggered an internal appeal procedure whereby within 30 days following the deadline for receiving challenges, the Union would hold a hearing before a three-member committee, two of whose members would be members of the Union. After the committee issued its decision, a challenger could appeal within 30 days to arbitration. Such an appeal procedure has been held to violate the rights of nonunion employees who are subject to agency fees because 1) the internal appeal process uses hearing officers employed and controlled by the Union; and 2) an objector obtains arbitration only after the Union's committee reviews his challenge. See Hudson, 475 U.S. at 307-08, 106 S.Ct. at 1076-77.
 
 
 64
 Therefore, because the Union's plan for the collection of agency fees from nonmembers violates the requirements of Hudson and, accordingly, plaintiffs' First Amendment rights are violated, we find that plaintiffs have demonstrated a substantial likelihood of success on the merits.
 
 C.
 Harm to Others
 
 65
 With respect to whether the requested preliminary injunction could harm third parties, the district court should have considered whether other nonunion members would be benefitted or harmed by the issuance of an injunction. Because we have found defendants' agency fee collection scheme in violation of the requirements of Hudson, it follows that the First Amendment rights of other nonmembers are also abridged. Thus, not only would a preliminary injunction in this case not harm others, it would benefit many.
 
 D.
 Public Interest
 
 66
 With regard to whether the public interest would be served by the issuance of a preliminary injunction, the district court should have considered whether the public interest would be served by judicial insistence upon a constitutionally valid collective bargaining agreement, if one was reached at all. Not only would such an agreement be in the public interest, it is constitutionally mandated in Hudson.
 
 V.
 
 67
 For the foregoing reasons, we find that the district court erred in failing to consider the requirements of Hudson when it decided plaintiffs' motion for a preliminary injunction. Moreover, it is clear that the agency fee collection plan the plaintiffs sought to temporarily enjoin is not a "constitutionally adequate plan" under Hudson, and plaintiffs' entitlement to relief from the provisions of that plan is not moot.
 
 
 68
 Accordingly, we REVERSE and REMAND with directions that the district court award the plaintiffs temporary injunctive relief consistent with this opinion.
 
 
 
 *
 The Honorable Robert M. McRae, Senior United States District Judge for the Western District of Tennessee, sitting by designation
 
 
 [1]
 The Supreme Court recently enunciated "a proverbial three-part test" whereunder a bargaining unit's activities are chargeable to nonunion members if (1) they are " 'germane' to collective-bargaining activity;" (2) they are "justified by the government's vital policy interest in labor peace and avoiding 'free riders;' " and (3) they do not "significantly add to the burdening of free speech that is inherent in the allowance of an agency or union shop." Lehnert v. Ferris Faculty Ass'n, --- U.S. ----, 111 S.Ct.1950, 1959, 114 L.Ed.2d 572 (1991). Lehnert does not alter or address Hudson's procedural requirements with respect to agency fee collection schemes and, thus, does not affect the outcome of this case