**James E. WRIGHT, et al., Plaintiffs,**

v.

**CITY OF CINCINNATI,
et al., Defendants.**

**No. 1:04 CV 463.**

United States District Court,
S.D. Ohio,
Western Division.

May 10, 2006.

Foundation Staff Attorney W. James Young and Fanon A. Rucker, Esq., Santen & Hughes, Cincinnati, represent the plaintiffs in Wright.

Thomas J. Kircher, Esq., and Robert J. Welch, Jr., Esq., of Kircher, Robinson & Welch, L.L.P., Cincinnati, for Defendant union.

Julia L. McNeil, Esq., City Solicitor, and Richard Ganulin, Esq., Assistant City Solicitor, Cincinnati, for Defendant City of Cincinnati.

DECISION AND ENTRY SUSTAINING IN PART PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND RENEWED MOTION FOR PRELIMINARY INJUNCTION (DOC. # 47); DECISION AND ENTRY OVERRULING CINCINNATI'S MOTION TO DISMISS (DOC. # 50); TEMPORARY RESTRAINING ORDER ENTERED AND EXTENDED BY AGREEMENT OF THE PARTIES; DIRECTIVE TO PLAINTIFFS' COUNSEL

RICE, Judge.

■ This putative class action is the latest chapter in an ongoing dispute between the parties concerning the agency shop or fair share fees the Plaintiffs, firefighters employed by Defendant City of Cincinnati, are required to pay to Defendant Cincinnati Firefighters Union Local 48, International Association of Fire Fighters, AFL–CIO ("Local 48" or "the Local").[1] Local 48 is the exclusive collective bargaining agent for firefighters employed by Cincinnati. The Plaintiffs have declined to become members of and to pay dues to Local 48. That has not, however, relieved them of the obligation of paying a sum to Local 48, in order to support its collective bargaining activities.[2] The Col-

1. In their Amended Complaint (Doc. # 42), the Plaintiffs have named Cincinnati, Local 48 and officials of Cincinnati, such as its Mayor and City Manager, as Defendants.

2. Unquestionably, employees who are represented by a union, without being members, can be required to pay a fee to support that representation, as long as the fee is "germane to collective bargaining," "justified by the

government's vital policy interest in labor peace and avoiding free-riders" and "does not significantly add to the burdening of free speech that is inherent in the allowance of an agency or union shop." *Lehnert v. Ferris Faculty Association*, 500 U.S. 507, 519, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991). *See also, Reese v. City of Columbus*, 71 F.3d 619 (6th Cir.1995), *cert. denied*, 519 U.S. 964, 117 S.Ct. 386, 136 L.Ed.2d 303 (1996).

lective Bargaining Agreement, which was in effect between Local 48 and Cincinnati from June 8, 2003, through June 4, 2005 ("2003–2005 CBA"),[3] contained a provision, under which every firefighter employed by Cincinnati, who has elected not to become a member of Local 48, is required to pay a fair share fee to the Local. Cincinnati withholds such fees from firefighters who are not members of the Local and pays the withheld amount to the union. The Plaintiffs initiated this litigation when that collective bargaining agreement was in effect. They alleged that the Defendants had violated their rights under the First, Fifth and Fourteenth Amendments, by withholding such fees from them, without providing the procedural protections required by the decision of the United States Supreme Court in *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986).

In its Decision of September 22, 2005, this Court overruled Plaintiffs' Motion for Preliminary Injunction (Doc. # 10), without prejudice to renewal. *See* Doc. # 40. In particular, the Court noted that Local 48 and Cincinnati had entered into a new Collective Bargaining Agreement which had replaced the 2003–2005 CBA and would be in effect until June, 2007 ("2005–2007 CBA"). The Court concluded that it was not possible to ascertain whether the Plaintiffs continued to require injunctive relief, given that Cincinnati and Local 48 had entered into the 2005–2007 CBA and that neither the Plaintiffs nor the Defendants had indicated, at that point, whether the newly executed CBA contained a fair share or agency shop provision. Moreover, there was no indication of whether

the alleged procedural shortcomings continued to exist.

In their Amended Complaint (Doc. # 42), Plaintiffs allege that the 2005–2007 CBA contains a fair share or agency shop fee provision and that fees continue to be withheld from their pay in accordance with such provision. They also contend that, on April 28, 2005, Local 48 gave them a new notice of the amount of their fair share fees, which continues to deprive them of the procedural protections required by the First, Fifth and Fourteenth Amendments to the United States Constitution. This case is now before the Court on the Plaintiffs' Motion for Temporary Restraining Order and Renewed Motion for Preliminary Injunction (Doc. # 47). During the telephone conference call conducted on Wednesday, November 9, 2005, the Court informed counsel that it would grant a temporary restraining order to Plaintiffs. The Court subsequently filed an Entry setting forth the language of that order. *See* Doc. # 52. Herein, the Court sets forth its reasons for concluding that the Plaintiffs are entitled to a temporary restraining order. As a means of analysis, the Court initially sets forth the standards it must apply, whenever it rules upon a request for such an order.[4]

■ In *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219 (6th Cir.1996), the Sixth Circuit indicated that in deciding whether to grant a Temporary Restraining Order, a District Court "is to review factors such as the party's likelihood of success on the merits and the threat of irreparable injury." *Id.* at 226. In support of that proposition, the *Procter & Gamble*

---

**3.** A copy of the 2003–2005 CBA is attached to Plaintiffs' original and Amended Complaints (Docs.1 and 42).

**4.** In ruling upon Plaintiffs' request for a temporary restraining order, the Court has con-

sidered the parties' arguments in support of and in opposition to the Motion for Preliminary Injunction (Doc. # 10), both in written form and during the oral argument conducted on February 4, 2005.

court cited *Mason County Medical Ass'n v. Knebel,* 563 F.2d 256, 261 (6th Cir.1977), a case which addressed the propriety of the District Court's decision to deny a request for a Preliminary Injunction. Based upon the language used by the Sixth Circuit in *Procter & Gamble,* as well as the case that court chose to cite, the Court deems it appropriate to apply the familiar four-part test, applicable to motions for Preliminary Injunction, to determine whether to grant a Temporary Restraining Order, to wit:

"When ruling on a motion for a preliminary injunction, a district court must consider and balance four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction."

*Memphis Planned Parenthood, Inc. v. Sundquist,* 175 F.3d 456, 460 (6th Cir. 1999) (quoting *Blue Cross & Blue Shield Mutual of Ohio v. Columbia/HCA Healthcare Corp.,* 110 F.3d 318, 322 (6th Cir. 1997)). Those factors, rather than being prerequisites to the granting of an injunction, are to be balanced. *United Food & Commercial Workers Union v. Southwest Ohio Regional Transit Authority,* 163 F.3d 341, 347 (6th Cir.1998). As a means of analysis, the Court initially addresses the four factors in the above order, following which it engages in the requisite balancing.

### 1. Likelihood of Success on the Merits

■ The Supreme Court has held that it is constitutionally permissible for a governmental employer to enter into an agency shop agreement with a union representing its employees, under which non-union employees are required to pay a fee to defray the costs of collective bargaining, contract administration and grievance adjustment. *Abood v. Detroit Bd. of Education,* 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977). As a corollary, however, non-union employees cannot be required to contribute funds to support ideological or political causes which are not germane to the union's duties as collective bargaining agent. *Ellis v. Brotherhood of Railway and S.S. Clerks,* 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984). With their request for interlocutory injunctive relief, the Plaintiffs contend that their rights and those of the members of the class they seek to represent have had their rights under the First, Fifth and Fourteenth Amendments violated by having fair share fees withheld, without first having been afforded the requisite procedural safeguards, rather than arguing that the fair share or agency shop provision in the 2005–2007 CBA is unconstitutional or that they are being required to support political or ideological causes that bear no relationship to the union's role as collective bargaining agent.

In their Motion for Preliminary Injunction (Doc. # 10), the Plaintiffs relied, *inter alia* upon *Chicago Teachers Union v. Hudson,* 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). Therein, the Supreme Court addressed the constitutionality of the procedures by which the line is drawn between expenses for which non-union employees can be required to contribute and those for which they cannot be so required, and the procedures for responding to nonmembers' objections to manner in which that line had been drawn. *Id.* at 294, 106 S.Ct. 1066. In *Hudson,* non-union teachers employed in the Chicago school system challenged the agency shop fees they were required to pay. For years, those non-union teachers had been free riders (i.e., they had not been required to contribute to the costs of collective bargaining, contract administration and griev-

ance adjustment, even though they had benefitted from those services), because state law did not authorize the payment of agency fees. After the state statutes had been amended to authorize the payment of such fees, the non-union teachers were required to pay fair share fees, resulting in the initiation of that litigation. Starting from the established principle that public employees have a First Amendment right to prevent the union from spending part of their agency shop fees on political or ideological views unrelated to union's role as exclusive bargaining representative (*id.* at 301–02, 106 S.Ct. 1066), the *Hudson* Court reiterated that a rebate of the portion of agency shop fees that support such views is an inadequate remedy. *Id.* at 305–06, 106 S.Ct. 1066. Rather, the Supreme Court established certain minimum procedural protections which must be afforded to dissenting employees, before they can be required to contribute agency shop fees, summarizing in the concluding portion of its opinion:

> We hold today that the constitutional requirements for the Union's collection of agency fees include an adequate explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute while such challenges are pending.

*Id.* at 310, 106 S.Ct. 1066.

With respect to the first requirement of *Hudson* (i.e., an adequate explanation of the basis for the fee), the Supreme Court clarified that a union "need not provide nonmembers with an exhaustive and detailed list of all its expenditures, but adequate disclosure surely would include major categories of expenses, as well as verification by an independent au-

ditor." *Id.* at 307, 106 S.Ct. 1066 n. 18. The Sixth Circuit has repeatedly held that, at a minimum, *Hudson* requires "detailed financial information concerning all major categories of union expenses, including those for payments made to affiliated unions, be audited by a certified public accountant independent of the union and provided to all non-members before any fees may be collected from them." *Tierney v. Toledo,* 824 F.2d 1497, 1506 (6th Cir.1987). *Accord, Weaver v. University of Cincinnati,* 942 F.2d 1039, 1046 (6th Cir.1991); *Lowary v. Lexington Local Bd. of Education,* 903 F.2d 422, 432 (6th Cir.), *cert. denied,* 498 U.S. 958, 111 S.Ct. 385, 112 L.Ed.2d 396 (1990).

In their Motion for Preliminary Injunction (Doc. # 10), the Plaintiffs argued that the Defendants had violated the principles established *Hudson* and the Sixth Circuit decisions applying that decision, because the financial disclosure provided by Local 48 was unaudited and, further, given that the union had failed to provide financial disclosure for its affiliates that were receiving a portion of their agency fees. *See* Doc. # 10 at 6–11. In their currently pending motion, the Plaintiffs concede that the Defendants have cured those alleged deficiencies. *See* Plaintiffs' Motion for Temporary Restraining Order and Renewed Motion for Preliminary Injunction (Doc. # 47) at 4 n. 2.[5] Therefore, in their current request for injunctive relief, the Plaintiffs rely upon the third basis for such relief set forth in their Motion for Preliminary Injunction (Doc. # 10), to which this Court now turns, to wit: Local 48 has failed to comply with the procedural requirements mandated by *Hudson.*

As is indicated above, one of the requirements established by the Supreme Court in *Hudson* is that dissenters be given "a

---

5. Local 48 does not now charge nonmembers with any portion of its expenditures to affiliates. Since the Plaintiffs and other nonmem-

bers are not being required to subsidize those expenditures, Local 48 need not provide them financial disclosure pertaining to same.

reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker." 475 U.S. at 310, 106 S.Ct. 1066. Before addressing the Plaintiffs' specific objections in that regard, the Court will initially examine the process established by Local 48 in its notice to nonmembers, concerning the fair share fees they were to pay from May 1, 2005, until March 31, 2006, for obtaining review of the amount of such fees.[6] Under those procedures, a nonmember who objects to the amount of the agency fee was required to submit an objection to the Executive Board of Local 48 within 10 days of receipt of the fair share notice. *See* Declaration of Harold Wright at Attachment 2.[7] Within 10 days thereafter, the Executive Board and objector were required to meet in an effort to resolve the objection. *Id.* If those efforts proved unsuccessful, the objector could, within 10 additional days (no more than 30 days after receipt of the fair share notice), file a challenge to the fair share determination with the Ohio State Employee Relations Board ("S.E.R.B."), specifying the allegedly arbitrary and capricious nature of that determination. *Id.* The S.E.R.B. would then decide whether Local 48's determination was arbitrary and capricious. *Id.* If a challenge was not made within the time period provided, Local 48's determination of the amount of the fair share fee was final and binding. *Id.*

The Plaintiffs initially argue that the procedures established by Local 48 violate that requirement by the imposition of an intermediate appeal procedure. *See* Doc.

# 47 at 10. In *Hudson*, the Supreme Court held that the union had failed to provide an impartial decisionmaker before whom the amount of the fee could be challenged, because the procedure was controlled by the union from "start to finish." 475 U.S. at 308, 106 S.Ct. 1066. Union officials made the initial determination of the amount of the agency fee, and the first two steps in the review process were before union officials, its Executive Committee and Executive Board. *Id.* The third step in the review process was before an arbitrator selected by the union. In *Weaver, supra,* the Sixth Circuit applied the principles established by the Supreme Court in *Hudson* to a dispute over the agency fees that dissenting non-union office employees of the University of Cincinnati were required to pay to the union representing such employees. Therein, the dissenters had filed suit, seeking, *inter alia,* preliminary injunctive relief to prevent the withholding of agency fees from them, because the union had failed to comply with the requirements established by the Supreme Court in *Hudson.* After the District Court had denied the plaintiffs' request for such injunctive relief, they brought an interlocutory appeal. The Sixth Circuit reversed, holding that the plaintiffs had established a substantial likelihood of success on the merits, in part, because the union had failed to provide a reasonably prompt opportunity to obtain review before an impartial decisionmaker. The *Weaver* court explained:

> Under the Union's notice procedure, the Union gave nonunion members the

---

**6.** Some of the currently applicable procedures to which Plaintiffs object are the same or very similar to the ones which were previously applicable in the 2003–2005 CBA. While the Court cannot now temporarily restrain procedures that have been replaced, it notes that many of the previously applicable procedures are the same as those currently applicable. Therefore, given that this Court concludes

that such currently applicable procedures violate the standards set forth in *Hudson,* it would seem that the procedures they have replaced also contravene those standards.

**7.** That declaration is attached to Plaintiffs' Motion for Temporary Restraining Order and Renewed Motion for Preliminary Injunction (Doc. # 47).

choice of sending either a letter of dissent or a letter of challenge. The letter of challenge then triggered an internal appeal procedure whereby within 30 days following the deadline for receiving challenges, the Union would hold a hearing before a three-member committee, two of whose members would be members of the Union. After the committee issued its decision, a challenger could appeal within 30 days to arbitration. Such an appeal procedure has been held to violate the rights of nonunion employees who are subject to agency fees because 1) the internal appeal process uses hearing officers employed and controlled by the Union; and 2) an objector obtains arbitration only after the Union's committee reviews his challenge. *See Hudson*, 475 U.S. at 307–08, 106 S.Ct. 1066.

942 F.2d at 1047.

■ In accordance with *Weaver*, this Court concludes that the Plaintiffs have established a substantial likelihood of success on the merits of their claim that their rights have been violated, since the intermediate appeal process established by Local 48 denies them "a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker" (475 U.S. at 310, 106 S.Ct. 1066), as required by *Hudson*. Like *Weaver*, the first step in the process herein, the meeting with the Executive Board, uses union officials, members of the Board, to resolve the matter. It is only after that step has been exhausted that a dissenting nonmember can obtain review by the S.E.R.B., an entity that is not affiliated with Local 48.

■ Plaintiffs also argue that Local 48 violated the command of *Hudson*, pertaining to the prompt opportunity to challenge the amount of the agency fee, because they would not have the right to appeal a decision by the S.E.R.B. to a court. According to Plaintiffs, procedures are constitutionally inadequate unless they provide for " 'extraordinarily swift judicial review for the [ ] challenges.' " Doc. # 47 at 6 (quoting *Hudson*, 475 U.S. at 307, 106 S.Ct. 1066 n. 20) (brackets added by Plaintiffs). This Court is unable to agree with Plaintiffs that a failure to provide court review of a determination by the S.E.R.B. renders the procedures constitutionally defective. The footnote from *Hudson* upon which Plaintiffs rely provides in its entirety:

We reject the Union's suggestion that the availability of ordinary judicial remedies is sufficient. This contention misses the point. Since the agency shop itself is "a significant impingement on First Amendment rights," *Ellis [v. Railway Clerks*, 466 U.S. 435, 455, 104 S.Ct. 1883, 80 L.Ed.2d 428(1984) ], the government and union have a responsibility to provide procedures that minimize that impingement and that facilitate a nonunion employee's ability to protect his rights. We are considering here the procedural adequacy of the agency shop arrangement itself; we presume that the courts remain available as the ultimate protectors of constitutional rights.

In other First Amendment contexts, of course, we have required swift judicial review of the challenged governmental action. See, e.g., *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); *Blount v. Rizzi*, 400 U.S. 410, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971); *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). In this context, we do not believe that such special judicial procedures are necessary. Clearly, however, if a State chooses to provide extraordinarily swift judicial review for these challenges, that review would satisfy the requirement of a reasonably prompt decision by an impartial decisionmaker.

475 U.S. at 307, 106 S.Ct. 1066 n. 20. As can be seen, the portion of *Hudson* upon

which Plaintiffs rely does not stand for the proposition that the availability of judicial review of the decision by an impartial arbiter is required. Accordingly, the Court concludes that the Plaintiffs have failed to establish a substantial likelihood of success on this contention.

■ Somewhat relatedly, the Plaintiffs argue that the S.E.R.B. is not an impartial decisionmaker, because its level of review is limited. This Court agrees with the Plaintiffs on this point. As is indicated above, the S.E.R.B. is limited to deciding whether Local 48's determination of the amount of the agency shop or fair share fee nonmembers must pay was arbitrary and capricious. That limited level of review is contrary to the repeated indications by the Supreme Court that the union has the burden of proving the propriety of that determination, given that it has ready access to the information upon which the determination was made. *Hudson,* 475 U.S. at 306, 106 S.Ct. 1066; *Abood,* 431 U.S. at 239–240, 97 S.Ct. 1782, n. 40; *Railway Clerks v. Allen,* 373 U.S. 113, 122, 83 S.Ct. 1158, 10 L.Ed.2d 235 (1963). Rather than the procedures imposing upon Local 48 the burden of proof concerning the propriety of the determination of the amount of the agency shop fee the Plaintiffs are required to pay, those procedures merely provide that the determination is to be reviewed by the S.E.R.B. under the arbitrary and capricious standard. The Sixth Circuit recently discussed that standard of review, reiterating that " '[t]he arbitrary and capricious standard is the least demanding form of judicial review of administrative action.' " *Calvert v. Firstar Finance, Inc.,* 409 F.3d 286, 292 (6th Cir.

2005) (quoting *McDonald v. Western–Southern Life Ins. Co.,* 347 F.3d 161, 169 (6th Cir.2003)). The *Calvert* court explained further:

> Under this standard of review, the Court determines whether, in light of the plan's provisions, the plan administrator's decision was rational. "[W]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." [*McDonald,* 347 F.3d at 169] (internal quotation marks and citations omitted).

*Id.* Quite simply, since reviewing a party's actions under the arbitrary and capricious standard is the antithesis to imposing the burden of proof upon that party, this Court concludes that the Plaintiffs have demonstrated a substantial likelihood of success on the merits of their claim that the procedure for review by an impartial decisionmaker provided herein does not comply with the standards established by the United States Supreme Court in *Hudson.*

Lastly, as is indicated above, the procedures adopted by Local 48 indicate that a decision of the S.E.R.B. is "final and binding." Plaintiffs argue that this provision violates *Hudson,* wherein the Supreme Court indicated that a decision by the impartial arbitrator "would not receive any preclusive effect in any subsequent § 1983 action." 475 U.S. at 308, 106 S.Ct. 1066 n. 21. Consequently, federal appellate courts have held that the arbitrator's decision is not to be given a preclusive effect in a subsequent action filed in federal court. *See e.g., Lancaster v. ALPA,* 76 F.3d 1509, 1521 (10th Cir.1996). *See also, Lowary, supra,* 903 F.2d at 432–34.[8] The Plaintiffs,

---

8. In *Lowary,* the Sixth Circuit held that a dissenter is not entitled to restitution of the entire amount of agency fees withheld from his or her pay, merely because of inadequate procedures. Rather, a dissenter could recover only that portion of an agency shop fee that

was not related to the union's role as exclusive collective bargaining agent. The Sixth Circuit also noted that, while the decision of an impartial arbitrator was not to be given preclusive effect, the District Court had not

**840**

however, have failed to cite any decision in which a court enjoined the collection of agency shop fees because the procedures for objecting to the amount of same indicated that the determination by the impartial decisionmaker would be final and binding. On the contrary, the remedy for such a provision is to refuse to give that determination preclusive effect, as the Supreme Court instructed in *Hudson,* and which the Tenth Circuit did in *Lancaster.* Accordingly, this Court concludes that Plaintiffs have failed to demonstrate a substantial likelihood of success on the merits of their claim that their rights have been violated, because the procedures by which they can challenge the amount of the agency shop fee they must pay, provide that the decision of the S.E.R.B. is final and binding.

In sum, the Court concludes that the Plaintiffs have demonstrated a substantial likelihood of success on the merits of their claims that the procedures by which they can obtain review of Local 48's determination concerning the amount of the fee they must pay are inadequate under *Hudson,* given that they are required to bring such a challenge before the Executive Board of that labor organization and, further, since those procedures limit that review to ascertaining whether that review was arbitrary and capricious.[9]

### 2. Irreparable Injury

■ In *Weaver,* the Sixth Circuit held that the plaintiffs, office workers employed by the University of Cincinnati, had suf-

fered irreparable injury as a result of having agency shop fees withheld from their pay without having been afforded the procedural protections required by *Hudson.* 942 F.2d at 1045–46. Therein, the Sixth Circuit rejected the arguments that plaintiffs had not suffered such an injury, because the amount of money being wrongfully withheld was insubstantial and since their fees were being held in escrow. *Id.* In accordance with *Weaver,* this Court concludes that the Plaintiffs have demonstrated that they will suffer irreparable harm if they are denied the requested injunctive relief.

### 3. Harm to Others

If this Court grants Plaintiffs a temporary restraining order, Local 48 will suffer harm, in that it will be deprived of the use of the Plaintiffs' agency fees during the pendency of such an order.

### 4. Public Interest

■ In *Weaver,* the Sixth Circuit held that the public interest favored the granting of preliminary injunctive relief in a similar dispute, i.e., whether plaintiffs could be required to pay an agency fee without being afforded the procedures required by *Hudson.* 942 F.2d at 1047. On the basis of *Weaver,* this Court concludes that the public interest favors granting the requested temporary restraining order.

---

erred in referring the matter of the amount of the refund to which plaintiffs were entitled to such a decisionmaker, given that the plaintiffs had not challenged the propriety of referring that issue to the impartial arbitrator.

9. Given that the Court has concluded that the Plaintiffs have demonstrated such a substantial likelihood of success, it overrules Cincinnati's Motion to Dismiss (Doc. # 50), filed in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure. It is axiomatic that

a court cannot grant such a motion, " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Buchanan v. Apfel,* 249 F.3d 485, 488 (6th Cir.2001) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The Court's conclusion that the Plaintiffs have established such a likelihood of success on the merits demonstrates that they can prove such a set of facts.

### 5. Balancing the Factors

This Court has concluded that Plaintiffs have demonstrated a substantial likelihood of success on the merits, that they will suffer irreparable injury in the absence of a temporary restraining order and that the public interest favors the granting of such relief. Balancing the Court's conclusions regarding those three factors against its conclusion that Local 48 will suffer harm if such injunctive relief is granted, this Court reaches the inescapable conclusion that the Plaintiffs are entitled to the requested temporary restraining order. Accordingly, the Court sustains the Plaintiffs' Motion for Temporary Restraining Order and Renewed Motion for Preliminary Injunction (Doc. # 47), as it relates to their request for a temporary restraining order. Two questions remain for the Court to resolve, to wit: the amount of the bond and the coverage of this order. The Court will address these questions in the above order.

Rule 65(c) of the Federal Rules of Civil Procedure sets forth the requirement of bond, when a court grants a temporary restraining order or preliminary injunction. The Plaintiffs have requested that this Court dispense with the requirement that they post a bond. The Sixth Circuit has repeatedly held that District Courts possess discretion to issue such injunctive relief, without the positing of a bond. *See Moltan Co. v. Eagle–Picher Industries, Inc.*, 55 F.3d 1171, 1176 (6th Cir.1995); *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 539 (6th Cir.1978), *cert. denied*, 440 U.S. 944, 99 S.Ct. 1420, 59 L.Ed.2d 632 (1979); *Urbain v. Knapp Bros. Mfg. Co.*, 217 F.2d 810, 815–16 (6th Cir.1954), *cert. denied*, 349 U.S. 930, 75 S.Ct. 772, 99 L.Ed. 1260 (1955). Herein, this Court will exercise that discretion in favor of foregoing the posting of a bond. Currently, the agency fees are withheld from the Plaintiffs' pay. If this Court subsequently decides that the Plaintiffs are liable to Local 48 for a portion of the agency fees, the collection of which is being restrained, a similar procedure can be adopted to ensure that Local 48 is compensated not only from that point forward, but also for the period during which the collection of such fees has been restrained.

The Plaintiffs argue that this Court should make its restraining order applicable to all members of the putative class. The Plaintiffs have filed their Renewed Motion for Class Certification and Appointment of Class Counsel (Doc. # 48). Although the Court will rule upon that request by separate entry, it appears that this motion is meritorious. Courts have held that it is proper to grant temporary injunctive relief to members of a putative class, before class certification, in a case challenging agency shop fees. *See Reese v. City of Columbus*, 798 F.Supp. 463, 472 (S.D.Ohio 1992) (making grant of preliminary injunction applicable to all members of putative class prior to certification, since the request for class certification would probably be granted); *Damiano v. Matish*, 1986 WL 68583 (W.D.Mich.1986) (making preliminary injunction that was anticipated to last no more than two or three months applicable to all members of the putative class, even though the plaintiffs had not moved to certify a class). This Court will extend the temporary restraining order to all members of the putative class, which Plaintiffs have defined to include current employees of Cincinnati who are represented exclusively by Local 48 for purposes of collective bargaining and are required to pay agency shop fees to that union, but are not members of it. Plaintiffs' Amended Complaint (Doc. # 42) at ¶ 14.

As indicated in its earlier Entry (Doc. # 52), the Court restrains the Defendants and their employees, agents and all others

acting in concert with any of them from withholding agency shop or fair share fees both from the Plaintiffs and from all current employees of Cincinnati who are represented exclusively for purposes of collective bargaining by Cincinnati Firefighters Union Local 48, International Association of Fire Fighters, AFL–CIO, and who are required to pay agency shop or fair share fees to that union, but are not members of it. This Court understands that the parties have agreed to extend this restraining order, pending the resolution of settlement efforts. This Court must be advised by Plaintiffs' counsel, not later than ten (10) calendar days from date, as to the status of those negotiations.